## In re USEC SECURITIES LITIGATION.

No. Civ. H–01–1858.

United States District Court, D. Maryland.

Oct. 22, 2001.

## MEMORANDUM OPINION

HARVEY, Senior District Judge.

In this consolidated securities fraud class action, suit has been brought against USEC, Inc. ("USEC"), certain of its officers and directors,[1] and the lead underwriters of USEC's initial public offering[2]

1. The individual defendants are William H. Timbers, Jr. (President and Chief Executive Officer of USEC), Henry Z. Shelton (Vice President and Chief Financial Officer) and J.

William Bennett (Vice President, Advanced Technology).

2. The "Underwriter Defendants" include Morgan Stanley Dean Witter & Co. Inc., Mer-

(collectively the "defendants"). Ten separate actions have been instituted by shareholders of USEC, who seek damages for violations of Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k, 771(2) and 77(o), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 77z–1(a)(3)(B). Jurisdiction is alleged pursuant to Section 22 of the Securities Act, 15 U.S.C. § 77v, and 28 U.S.C. §§ 1331 and 1337. An Order has previously been entered by the Court consolidating these actions for all purposes pursuant to Rule 42(a), F.R.Civ.P.

Presently pending before the Court is a motion filed by class members Howard Cohen and Myles Wren (the "Movants"), requesting the Court: (1) to appoint the Movants as lead plaintiffs for the class under Section 15 U.S.C. § 77z–1(a)(3)(B) of the PSLRA, and (2) to approve the Movants' selection of the law firms of Milberg Weiss Bershad Hynes & Lerach LLP ("Milberg Weiss") and Savett Frutkin Podell & Ryan, P.C. ("Savett Frutkin") as lead counsel and Charles J. Piven, Esq. as liaison counsel.[3] Also pending before the Court are two motions to strike class allegations filed by the defendants. Memoranda and exhibits in support of and in opposition to all three pending motions have been submitted by the parties, and a hearing on the motions has been held in open court.

For the reasons stated herein, this Court will grant the Movants' motion to be appointed lead plaintiffs and will approve their selection of lead and liaison counsel. Defendants' motions to strike class allegations will be denied.

I

*Procedural History*

On October 27, 2000, plaintiff Paul Spirgel filed the first of these ten securities fraud actions in the United States District Court for the Western District of Kentucky, Paducah Division.[4] This action and similar later suits were brought on behalf of individuals purchasing USEC common stock in or traceable to USEC's July 23, 1998 initial public offering (the "IPO"), including all purchasers between July 23, 1998 and December 2, 1999 (the "Class Period").

Pursuant to 15 U.S.C. § 77z–1(a)(3)(A)(i), notice that a class action had been initiated against the defendants was published on the *Business Wire*, a widely circulated national business oriented wire service. The notice, as amended, advised members of the proposed class of their right to move the court to serve as lead plaintiff no later than January 8, 2001, which was 60 days after November 7, 2000, the date when the notice was published. On January 8, 2001, the Movants filed their motion for appointment as lead plaintiffs and for approval of their selection of lead and liaison counsel.

On June 14, 2001, the United States District Court for the Western District of Kentucky granted defendants' motion to

ril Lynch & Co., Janney Montgomery Scott Inc., Lehman Brothers, Prudential Securities Inc., Salomon Smith Barney, and M.R. Beal and Co.

**3.** The motion, as filed in the United States District Court for the Western District of Kentucky, requested that McMurry & Talbott, a Kentucky firm, be appointed liaison counsel. Since the case has now been transferred to

the District of Maryland, the motion has been orally amended to include the request that Charles J. Piven, Esq., a Baltimore attorney, be appointed liaison counsel.

**4.** That action was later docketed in this Court as *Spirgel, et al. v. USEC, Inc., et al.*, Civil No. H–01–1858.

transfer venue of the ten cases to the District of Maryland pursuant to 28 U.S.C. § 1404(a). On August 3, 2001, the ten pending cases were reassigned to the undersigned. On August 10, 2001, following a status conference in open court, this Court entered an Order consolidating the ten pending class actions for all purposes.

## II

### Background Facts

USEC is a Delaware corporation whose principal executive offices are located in Bethesda, Maryland. USEC produces and sells enriched uranium to utility companies for use in nuclear power plants. USEC was wholly owned by the United States government [5] prior to its IPO of July 23, 1998. This class action arises as a result of purchases of stock made by investors during the Class Period.

On July 23, 1998, USEC filed a final Registration Statement with the SEC, which incorporated a prospectus. Between July 23 and July 28, 1998, USEC sold 100 million shares of common stock for $14.25 per share. Plaintiffs allege that the prospectus was false and misleading because it failed to disclose and misrepresented numerous adverse facts. It is asserted by plaintiffs that defendants failed to disclose or misrepresented that the market for enriched uranium was in severe decline as the supply available in the market was increasing, that USEC was locked into a contract to purchase uranium from Russia at a fixed price which would soon be greater than the price it could resell it on the markets,[6] and that an advanced enrichment technology known as ALVIS, which was mentioned in the prospectus and which theoretically would permit USEC to compete effectively in the future, was not technologically feasible and would be abandoned.[7]

On June 9, 1999, USEC announced that it was abandoning the proposed ALVIS technology. On October 30, 1999, it was publicly disclosed that USEC was seeking $200 million from the United States government to subsidize its contract with Russia. On December 2, 1999, USEC announced that it would continue with its agreement with Russia despite the government's refusal to grant any aid. On October 26, 2000, USEC common stock closed at $4.5625 per share.

Movants Cohen and Wren purchased, respectively, 118,950 and 135,000 shares of common stock during the Class Period, and allege that they suffered an estimated loss of $925,122 and $863,425 respectively.

## III

### Applicable Principles of Law

In 1995, Congress enacted the PSLRA, "in response to perceived abuses in securi-

---

**5.** USEC was a federally-chartered corporation created by the Energy Policy Act of 1992. In 1996, Congress enacted the USEC Privatization Act, 42 U.S.C. § 2297h, which ordered USEC to privatize itself by incorporating a non-governmental corporation with which it would merge. Common stock in this private corporation was sold to the public pursuant to the IPO.

**6.** In 1993, the United States had agreed to buy enriched uranium from the Russian Federation at prices set until at least 2001. The uranium was removed from Russian warheads, with the aim of reducing Russia's nu-

clear arsenal. USEC, under its federal and now private charter, is the Executive Agent for the government in this matter. USEC undertook to resell the enriched uranium in the ordinary course of its business.

**7.** USEC currently uses the Gaseous Diffusion method for enriching uranium. The new laser-based enrichment technology, called Atomic Vapor Laser Isotope Separation ("ALVIS"), would theoretically consume far less power, thereby reducing the major part of USEC's production costs.

ties fraud class action litigation ..." *In re Microstrategy Inc. Secs. Litig.,* 110 F.Supp.2d 427, 430 (E.D.Va.2000). The principal reason behind the congressional action "was the belief that the plaintiff's bar had seized control of class action suits, bringing frivolous suits on behalf of only nominally interested plaintiffs in the hope of obtaining a quick settlement." *Greebel v. FTP Software, Inc.,* 939 F.Supp. 57, 58 (D.Mass.1996), *citing* S.Rep. No. 104–98, (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 687–90. Congress, in passing the PSLRA, intended to ensure more effective representation of investors in securities fraud class actions by transferring control of the litigation from the attorneys to the investors. *In re Lucent Technologies Inc.,* 194 F.R.D. 137, 144 (D.N.J.2000).

To achieve the goal of more effective representation for investors, the "PSLRA provides a method for identifying the plaintiff, or plaintiffs, who is, or are, the most strongly aligned with the class of shareholders, and the most capable of controlling the selection, and actions, of counsel." *Id.* at 144–45. The PSLRA changed the procedure for establishing control of the litigation from being based on a "race to the court house" to a selection process whereby the most adequate plaintiff or plaintiffs would be selected to lead the litigation. *Id.*

The procedure established by the PSLRA is designed to provide assurances that the litigation in question is being pursued by the actual plaintiffs, as opposed to nominal or so-called "professional" plaintiffs. The PSLRA attempts to achieve this goal in part by imposing a disclosure requirement on a plaintiff seeking to serve as a representative party, as well as by requiring notice to be published early in the litigation informing potential plaintiffs of the pending litigation and of their right

to move to be appointed lead plaintiff. *Greebel,* 939 F.Supp. at 58.

The PSLRA requires plaintiffs seeking to serve in a representative capacity to provide along with their complaint a sworn certification that:

> (i) states that the plaintiff has reviewed the complaint and authorized its filing; (ii) states that the plaintiff did not purchase the security ... at the direction of plaintiff's counsel or in order to participate in any private action arising under this subchapter; (iii) states that the plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary; (iv) sets forth all of the transactions of the plaintiff in the security ... during the class period; (v) identifies any other action under this subchapter, filed during the 3–year period preceding the date on which the certification is signed by the plaintiff, in which the plaintiff has sought to serve, or served, as a representative party on behalf of a class; and (vi) states that the plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's pro rata share of any recovery.

15 U.S.C. § 77z–1(a)(2)(A).

This information is required so that the court may be assured that the named plaintiff has suffered more than a nominal loss, is not a professional plaintiff, and is otherwise interested and able to serve as a class representative. *In re Microstrategy,* 110 F.Supp.2d at 432.

The notice requirement of the PSLRA provides that within 20 days after the filing of a complaint, the plaintiff filing the first action must cause notice to be published in a widely circulated national business oriented publication or wire service. The notice serves to advise members of the purported class of the pendency of the

action, the claims asserted therein and the purported class period. The notice must also advise prospective class members that no later than 60 days after publication of the notice, any member of the prospective class may move the court to be appointed lead plaintiff. "The fundamental purpose of the ... notice requirement is to present a fair recital of the subject matter of the suit and to inform all class members of their opportunity to be heard." *In re Lucent*, 194 F.R.D. at 146. The court is then required to consider any motions filed, including those by purported class members who have not been individually named as a plaintiff, and to appoint the member or members that the court determines to be the most capable of adequately representing the interests of the class members. 15 U.S.C. § 77z–1(a)(3)(B)(i). The "most adequate plaintiff" shall, subject to the approval of the court, select and retain counsel to represent the class. 15 U.S.C. § 77z–1(a)(3)(B)(v).

Insofar as the selection of a lead plaintiff is concerned, the PSLRA creates a "rebuttable presumption ... that the most adequate plaintiff ... is the person or group of persons that—(aa) has either filed the complaint or made a motion in response to a notice ...; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 77z–1(a)(3)(B)(iii)(I). This presumption may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff will not fairly and adequately protect the interests of the class, or is subject to unique defenses that render such plaintiff incapable of adequately representing the class. 15 U.S.C. § 77z–1(a)(3)(B)(iii)(II).

Courts have debated the question whether the adequacy of the proposed lead plaintiff or plaintiffs can be challenged only by members of the prospective plaintiffs' class or can also be challenged by defendants. Resolution of this question is especially important where, as in the present case, the motion for appointment as lead plaintiff is not opposed by any other member of the prospective plaintiffs' class. The PSLRA clearly states that questions pertaining to the adequacy of a lead plaintiff may be challenged only by a member of the purported plaintiffs' class. *Greebel*, 939 F.Supp. at 60.

In *Greebel*, the court concluded that a defendant lacked standing to challenge whether the movants satisfied the statutory criteria to be adequate lead plaintiffs. *Id.* However, the court further held that a defendant could object to the adequacy of certification and notice, inasmuch as they are procedural prerequisites for the court's consideration of a motion for appointment of a lead plaintiff. *Id.* The failure of a named plaintiff to file a certification with the complaint and to serve notice to class members is fatal to the maintenance of the putative class action, and, as a result, defendants have an interest in insuring that these requirements are met. *Id.* Allowing defendants to object to certification and notice enhances judicial administration of the case, because inadequacies may not otherwise be brought to the court's attention. *Id.*

## IV

### *Discussion*

#### (a)

##### *Lead Plaintiffs*

The Movants contend that they satisfy all of the requirements of the PSLRA, and that they should therefore be appointed lead plaintiffs and have their selection for

lead and liaison counsel be approved by the Court. According to the Movants, they are entitled to the statutory presumption that they are the most adequate plaintiffs because they filed their motion in response to the published notice, because they have the largest financial interest in the relief sought by the class, and because they satisfy the requirements of Rule 23, F.R.Civ.P.

Applying the principles of the PSLRA and the many pertinent decisions construing it, this Court has concluded that the motion of Howard Cohen and Myles Wren to be appointed lead plaintiffs and for approval of their selection of lead and liaison counsel should be granted. They have timely filed a motion in response to the notice published on the *Business Wire.* No other plaintiff and investor has filed a similar motion. Cohen and Wren clearly have the largest financial interest in the relief sought by the class, and the Court is satisfied that, as lead plaintiffs, the Movants satisfy the requirements of Rule 23. In this regard, no more than a preliminary showing need be made early in the case. At this stage of the case, the Court concludes that the Movants have satisfied the typicality and adequacy provisions of Rule 23. A wide ranging analysis under Rule 23 is not appropriate at this initial stage of the litigation and should be left for the Court's later consideration of a motion for class certification. *In re Milestone Scientific Sec. Litig.,* 183 F.R.D. 404, 414 (D.N.J.1998).

Accordingly, the Court concludes that Movants Cohen and Wren are entitled in this case to the statutory presumption that they are the most adequate investors and that they will fairly and adequately represent the class. No proof of inadequacy exists in the record here, and there has been no showing that the Movants are subject to unique defenses. *See* 15 U.S.C.

§ 77z–1(a)(3)(B)(ii)(II). In their oppositions to the Wren and Cohen motion, the defendants argue that the complaints under which the Movants seek to be appointed lead plaintiff fail to comply with the certification and notice requirements of the PSLRA. Defendants contend that such failures would preclude these cases from proceeding as a class action and that the need to appoint the lead plaintiffs is therefore obviated. They have accordingly moved to strike the class allegations.

Responding to the defendants' motions and to their opposition to the pending motion for appointment of lead plaintiffs, the Movants first contend that the defendants do not have standing in a securities class action like this one to oppose a motion for appointment of a lead plaintiff. This Court must disagree.

The standing of a defendant to challenge a motion to be appointed lead plaintiff depends upon the basis for that challenge. *Greebel,* 939 F.Supp. at 60. Here, the defendants contend that there has not been compliance with the certification and notice requirements of the PSLRA. The failure of a plaintiff to file a certification with the complaint and the failure of a plaintiff to serve a notice to class members are fatal to the maintenance of a putative class action. *Id.* Defendants have the same interest in demanding compliance with provisions of the PSLRA as they have with other requirements relating to the certification of a class, and the granting by a court of standing to defendants to object on these grounds enhances effective judicial administration of the case. *Id.* This Court accordingly concludes that the defendants have standing to assert the challenges contained in their oppositions to the pending Cohen and Wren motion.

■ However, the Court concludes on the record here that the notice and certification requirements of the PSLRA have

been met in this case. The notice in this case fairly explained the subject matter of the class action and informed all members of the class of their opportunity to be heard with regard to serving as lead plaintiff. *See In re Lucent*, 194 F.R.D. at 147–48. The notice in question which was published on the *Business Wire* informed potential class members (1) of the pendency of the action; (2) of the claims asserted therein; (3) of the purported class period; and (4) that any member might move to be appointed lead plaintiff within 60 days of the publication of the notice. *See* § 77z–1(a)(3)(A)(i). Although the 60 day deadline for the filing of a motion to be appointed lead plaintiff was inadvertently listed in the original notice as "January 6, 2000," the mistake was discovered and promptly corrected. Several hours after the original notice was published, a corrected notice went out over the *Business Wire* indicating that the deadline in question was January 8 of 2001.

█ Relying on *Lucent*, defendants argue that the notice in this case did not adequately list the claims asserted in the original complaint. This contention is without merit. In this case, the contents of the notice at issue went well beyond the "bare bones notification" challenged in the *Lucent* case. 194 F.R.D. at 147. The notice in this case stated that the prospectus failed to adequately disclose the true risks and uncertainness in the uranium enrichment business, that the prospectus downplayed the fact that the contract with Russia would turn unprofitable, and that the prospectus failed to reveal the true facts about the ALVIS technology which was essential for USEC's profitability. The notice gave the date when all of these misstatements occurred, gave the date when the prospectus was released, and

stated that the price of the stock declined as these undisclosed risks materialized. The Court is satisfied that the notice in this case adequately met the requirements of the PSLRA. The subject matter of the class action was fairly explained, and the notice adequately informed all prospective members of the class of their right to be heard with regard to serving as lead plaintiff.

Defendants' reliance on *Lucent* is misplaced. The claims in that case were brought under the Securities and Exchange Act of 1934. In *Lucent*, the Court was concerned about the existence of possible conflicts between the purchasers of the securities at different times based on different misstatements. Here, the prospective class includes only individuals who purchased stock during or traceable to the IPO, and all of the alleged misstatements are to be found in the prospectus. Moreover, the notice in *Lucent* failed to include the caption of the case, the name of the judge to whom the case had been assigned, and the address of the court. The notice in this case contains all of these items and presents "a fair recital" of the subject matter of the suit. *See In re Lucent*, 194 F.R.D. at 146.

Defendants further argue that the certification filed with the initial complaint failed to attach, as claimed, an addendum setting forth all transactions in the securities during the class period. Responding to this argument, the Movants assert that due to a clerical error the addendum was not initially filed with the Court, and they have now filed the completed certification. According to the Movants, the *Spirgel* certification, as amended, satisfies the requirements of the PSLRA.[8] This Court would agree.

---

**8.** No certifications at all were attached to a number of the complaints. The certifications

of all plaintiffs have now been filed. Pursuant to Rule 15(a), F.R.Civ.P., plaintiffs were enti-

■ The certification required by the PSLRA should show the court that the named plaintiff (1) has suffered more than a nominal loss, (2) is not a professional litigant and (3) is otherwise interested and able to serve as a class representative. *Microstrategy*, 110 F.Supp.2d at 432. The *Spirgel* certification challenged here by defendants meets all of these basic requirements. Although the challenged certification did not set forth "all of the transactions" of plaintiff Spirgel in the security during the class period, defendants concede that the other five requirements of 15 U.S.C. § 77z–1(a)(2)(A), namely subsections (i), (ii), (iii), (v), and (vi), were all met by the certification at issue.

Defendants argue that the certification was deficient in that it did not assure the Court that the plaintiff had suffered more than a nominal loss. However, the completed certification indicates that the complainant did purchase 700 shares on July 28, 1998 from the IPO. The date and amount of the purchase sufficiently demonstrate that the complainant in the original case suffered more than a nominal loss. From its review of the challenged certification, the Court is satisfied that the named plaintiff has suffered more than a nominal loss, that he is not a professional plaintiff and that he is otherwise interested and able to serve as a class representative. *In re Microstrategy*, 110 F.Supp.2d at 432. The Court accordingly concludes that the complainant in the *Spirgel* case is not the type of plaintiff whom Congress meant to exclude.

For these reasons, the Court concludes that the alleged defects in the notice and in the certification are not grounds for the striking of the class allegations. Accordingly, defendants' motions to strike will be denied.

(b)

*Lead and Liaison Counsel*

Pursuant to the PSLRA, the lead plaintiffs have the right to select class counsel, "subject to the approval of the Court." 15 U.S.C. § 78u–4(a)(3)(B)(v). The Movants have selected and retained the Milberg Weiss and the Savett Frutkin law firms as lead counsel. They have also selected and retained Charles J. Piven, Esq. as liaison counsel. On the record here, this Court concludes that the Movants have chosen competent and experienced lead and liaison counsel. As disclosed by the record, the attorneys selected have extensive experience in class action securities cases like the pending one. Accordingly, the Court will approve the selection of lead and liaison counsel made by the Movants.

■ The defendants challenge the Movants' selection of two separate law firms as lead counsel. However, the PSLRA does not explicitly restrict lead counsel to one law firm. *Microstrategy*, 110 F.Supp.2d at 440. Indeed, there are instances in which a class is well served by having two or more law firms combine to direct the litigation. *Id.* Various courts have held that multiple law firms could share lead counsel duties so long as there are assurances from the firms that they can work together and serve the best interests of members of the class. *Id.*[9]

In this case, the Court is satisfied that the law firms of Milberg Weiss and Savett Frutkin can work together efficiently and without unnecessary duplication of ser-

---

tled to amend their complaints before responsive pleadings were served by filing adequate certifications, and such amendments would relate back to the date of the original pleadings.

9. The Milberg Weiss firm was appointed co-lead counsel in the *Microstrategy* case. *See* 110 F.Supp. at 440–41.

vices. Dual lead counsel is particularly appropriate here since there are two groups of defendants, with each group being represented by separate law firms.[10] Multiple claims have been asserted by plaintiffs against USEC as the issuer and against the other defendants as the underwriters. No increase in litigation costs will result, inasmuch as the PLSRA places restrictions on the payment of attorneys' fees and expenses. *See* 15 U.S.C. § 77z–1(a)(6).

The Court will further approve the Movants' selection of Charles J. Piven, Esq. as liaison counsel. Mr. Piven has considerable experience in class action securities cases, has an office in Baltimore and has served as liaison counsel in many similar cases filed in this Court.

## V

### *Conclusion*

For all the reasons stated, the Cohen and Wren motion for appointment of lead plaintiff and for approval of their selection of lead and liaison counsel will be granted. Defendants' motions to strike class allegations will be denied. An appropriate Order will be entered by the Court.

---

**10.** Skadden Arps Slate Meagher & Flom represent USEC and its officers while Cravath Swaine & Moore and Crowell & Moring represent the underwriters.